# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:15-cv-526-FDW

| | |
|---|---|
| ANTHONY COBB, | ) |
|                 Plaintiff, | ) |
| vs. | ) |
| FRANK PERRY, et al., | )     **ORDER** |
|                 Defendants. | ) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A, (Doc. No. 1). This Court has granted Plaintiff the right to proceed in forma pauperis. (Doc. No. 6).

## I.    BACKGROUND

Pro se Plaintiff Anthony Cobb is an inmate of the State of North Carolina, currently incarcerated at Randolph Correctional Institution in Asheboro, North Carolina. Plaintiff filed this action on October 30, 2015, pursuant to 42 U.S.C. § 1983, naming the following as Defendants: (1) Frank Perry, identified as the Secretary of the North Carolina Department of Public Safety ("NCDPS"); (2) George T. Solomon, identified as the Director of the NCDPS; (3) Paula Smith, identified as Doctor of Medical Services of the NCDPS; (4) John Doe, identified as Superintendent of Lanesboro Correctional Institution; (5) Ella Dixie, identified as a Nurse at Lanesboro; (6) Wayne Miller, identified as a Nurse at Lanesboro; (7) FNU Hinton, identified as a correctional officer at Lanesboro; (8) FNU Hinton, identified as a correctional officer at Lanesboro; (9) Edith Fultz, identified as an Administrative Secretary at Lanesboro; (10) "John Does 1-100," identified as employees, vendors, or agents and assigned to Lanesboro; (11) "Jane

1

Does 1-100," identified as employees, vendors, or agents and assigned to Lanesboro; and (12) "the State of North Carolina." (Doc. No. 1 at 6-8). Plaintiff purports to bring a claim against Defendants for deliberate indifference to serious medical needs while Plaintiff was incarcerated at Lanesboro Correctional Institution. Specifically, Plaintiff alleges that:

> Upon intake [at Lanesboro], the Plaintiff made prison staff aware of his preexisting conditions. He entered prison as disabled under [the] Americans with Disabilities Act to include but not limited to severe head injury, neck fracture, back injury, fracture of several vertebrae, and extensive nerve damage, and rheumatoid arthritis. Plaintiff saw his regular doctor bi-weekly, and was seeing a pain management doctor monthly for the past 8 years prior to incarceration. Plaintiff's pain management clinic was prescribing oxycodone, 10 mg, 4 times per day. This managed the Plaintiff's chronic pain, prior to incarceration. Plaintiff sign[ed] numerous release forms to authorize NCDPS to get any and all medical records from outside doctors. . . . .
> On or about 13th August, 2014, the Plaintiff was being transported from Lanesboro Correctional Institution to Central Prison for an appointment with the medical clinics. Plaintiff was transported in a non-handicapped van even though Plaintiff is disabled and is confined to a wheelchair. Hinton lifted the Plaintiff into the van, since there was no handicapped lift, and put the Plaintiff in the first bench seat. Officer Hinton failed to secure Plaintiff in the seat belt which is a violation of NCDPS policy. The Plaintiff's wheelchair was placed between the first bench seat and the rear bench seats over the wheel well. The wheelchair was not secured with any type of restraints. Both transportation correctional officers are named Hinton.
> Plaintiff was only restrained by handcuffs with black box, waist chain secured to the handcuffs and black box, and both feet shackled. Plaintiff had no way to move or brace himself if an emergency happened, without a seat belt being placed on him. Both officers were speaking to each other and using their personal cell phones, when correctional officer Hinton (driver) looked back to the highway and he was about to rear-end the vehicle in front of him. Correctional Officer Hinton was traveling at approximately 80 miles per hour, in violation of NCDPS policy and speed limit.
> To avoid hitting the vehicle in front of him, the correctional officer slammed on the brakes, throwing the plaintiff into the metal cage that separates the correctional officers from the inmates head first, and the non-secured wheelchair came violently into the Plaintiff's body. Since the Plaintiff is a large man, he was thrown at a high rate of speed and then dropped to the van floor. Both correctional officers Hinton did not make sure if the plaintiff was ok or not, and if he needed immediate emergency care as outlined in Chapter F, Section .2800(E)(1) . . . ." Neither correctional officer followed this NCDPS policy.
> Plaintiff was left on the van floor with the wheelchair on top of him for

2

approximately 40 minutes until they arrived at Central Prison. Both correctional officers Hintons failed to follow NCDPS policy, Chapter F., Section .1100(G)(I), which states "Vehicles used in transporting inmates will be thoroughly inspected before inmates are loaded" and "correctional staff transporting inmates may not travel in excess of the posted speed limit."

If NCDPS Policy was followed the injuries to the Plaintiff could have been avoided. . . . . This incident aggravated [Plaintiff's] pre-existing injuries and [he] was in extreme pain. Once they arrived at Central Prison his cervical spine was x-rayed and no acute fractures were noted. However, it does not note if any fractures were present, nor if there was any tissue damage. In addition, his head injury and other injuries were ignored, and no medical tests were performed.

Plaintiff was given Motrin 800 mgs for the extreme pain he was experiencing, which did not help. Plaintiff reported the incident to correctional officials and pictures were taken of the injuries inflicted by this incident. Plaintiff remains in extreme pain and has notified staff of such. …. Lanesboro Correctional Institution, on or about 6th September 2014, sent the Plaintiff by ambulance to Anson County Emergency Clinic for the injuries sustained in the accident on August 13, 2014. Upon examination the plaintiff was prescribed Lortab for the chronic pain, steroids for the inflammation, and referred to an orthopedic specialist. The prison doctor denied the treatment of the outside Anson County Emergency Clinic Doctor.

(Doc. No. 1 at 8-17). Based on the above factual allegations, Plaintiff alleges that all of the named Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief. In its

3

frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

### III. DISCUSSION

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of

4

abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

The Court finds that Plaintiff's allegations are inadequate to state a cognizable claim for deliberate indifference to serious medical needs against any of the named Defendants. First, aside from Defendants Hinton and Hinton, Plaintiff has not alleged how the various named Defendants personally participated in the alleged violations of Plaintiff's Eighth Amendment rights. It is not enough to name individuals as Defendants and then allege generally, without specific facts as to each one's conduct, that they were all deliberately indifferent to Plaintiff's serious medical needs. For a defendant to be held liable under Section 1983 in his individual capacity, the plaintiff must demonstrate that the defendant personally participated in the alleged denial of rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978). Moreover, it is also not enough to merely name individuals as Defendants in the Complaint and then reference Plaintiff's administrative grievances, which purportedly describe conduct by some of the named Defendants. Rather than dismissing the Complaint, however, the Court will allow Plaintiff the opportunity to cure the defects by amending his Complaint.

In the amended complaint, Plaintiff must re-allege all of his claims against all persons he

wishes to name as Defendants, and he must allege how each named Defendant personally participated in the deliberate indifference to Plaintiff's serious medical needs. Along the same lines, it is well-settled that Defendants cannot be held liable merely by virtue of their supervisory positions. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (stating that under § 1983, liability is personal in nature, and the doctrine of respondeat superior does not apply). Therefore, the Court warns Plaintiff that, in his amended complaint, unless he alleges some personal conduct by any of the named supervisors, Plaintiff's claims against them will be subject to dismissal because they cannot be held liable merely based on their positions as supervisors.

The Court further finds that, to the extent that Plaintiff has named the "State of North Carolina" as a Defendant, neither the State nor its agencies constitute "persons" subject to suit under Section 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). Furthermore, the Eleventh Amendment bars Plaintiff's suit for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844 (4th Cir. 2003). Thus, the State of North Carolina is dismissed as a Defendant.

Finally, the Court advises Plaintiff that his current factual allegations against the two correctional officers named Hinton who transported him in a van do not sufficiently state a claim for a federal constitutional violation. At most, the factual allegations against these two Defendants rise to the level of negligence. Failure to follow prison policy does, in and of itself, not rise to the level of a constitutional violation. See Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (unpublished) "[P]rison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation."), cert. denied, 134 S. Ct. 925 (2014)). Thus, to the extent that Plaintiff is attempting to bring a constitutional claim against the two Defendants named Hinton,

6

the current allegations do not state a cognizable constitutional claim against these two Defendants.

Rather than dismissing this action without prejudice for failure to state a cognizable claim against any of the named Defendants, the Court will, instead, allow Plaintiff twenty days in which to amend his Complaint. In the Amended Complaint, Plaintiff must re-allege all of his claims against all persons he wishes to name as Defendants. If Plaintiff does not amend the Complaint within twenty days of this Order, this action will be dismissed without prejudice and without further notice.

### IV. CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff has not alleged a cognizable federal constitutional claim against any of the named Defendants sufficient to survive this Court's initial review. The Court will allow Plaintiff twenty days in which to amend the Complaint to cure the defects in his Complaint.

**IT IS, THEREFORE, ORDERED** that:

1. The Court will allow Plaintiff twenty days in which to amend the Complaint to cure the defects in his Complaint. The Amended Complaint must re-allege all claims against all persons Defendants seeks to name as Defendants.

2. If Plaintiff fails to amend the Complaint to cure the defects, this action will be dismissed without prejudice and without further notice to Plaintiff.

3. The State of North Carolina is dismissed as a Defendant.

Signed: January 27, 2016

Frank D. Whitney
Chief United States District Judge